The opinion of the court was delivered by
Gibson, J.
The question is whether taxes due for seated lands are a lien on them, or only a personal charge against the owner or occupant. No lien is expressly created by any of the various acts of assembly on the subject, and the inquiry will therefore be, whether an intention to render the taxes a charge on seated lands can be collected from any or all of those acts, by implication. This implication must arise, if at all, from the 4th section of the original act, (act of 11th April, 1799,) by which the assessors are requested to take an account of the names of the taxable inhabitants within their respective districts, and of certain kinds of property made taxable, among which land is mentioned, together with almost every sort of building, as well as ground rents. There would be-little doubt if the question depended on this section alone; but I shall presently endeavo'r to show that it does not. With respect to the taxation of property, the principle adopted by the legislature, that the quantum of the assessment is to be regulated by the quantum of the property possessed, is a principle of natural justice, which has, Ibeliéve, been recognized by every legislature in the union; and to give full effect to it in practice, it was absolutely necessary to have returned along with the name of the taxable inhabitant, the various kinds and amount of the property in respect of which he was to be taxed. This, and not an intention to lay the tax specifically on the property, exceptin the case of unseated lands, was the object in hav-ving any thing returned besides the name of the person to be taxed. The tax can no more be said to be laid specifically on the land than on the personal property returned; and if both real and per *113 sonal were specifically taxed, each would necessarily be. respectively liable in the hands of the owner only for what’was a charge on it: yet the whole of the personal property may be distrained, as well for what is assessed on the land, as what is assessed on it particularly', because the whole is one charge. There is then no reason to say there is a lien on the land, more than on the chattels returned: and with respect to them, the existence of a lien has never been pretended.
But other provisions of this act and of subsequent acts conclusively show that the legislature never thought of creating a lien. By the 15th section of the original act, the remedy is by distress; or if personal property cannot be found, by commitment of the body: and by the 16th section, the collector is to act in the matter at his peril; for if he fail to pay the whole amount of his duplicate within three months after it has been put into his hands, he is to be charged with the balance unpaid, a transcript of which being filed in the prothontary’s office of the proper county, is to have the effect of a judgment. And further: by the 18th and 19th sections, the treasurer is required to issue his warrant commanding the sheriff to seize the body and estate of such delinquent collector, on the return of which the commissioners are authorised to issue their warrant commanding the property to be sold. From this it is plain the intention was that the commissioners should look to the collector alone, the whole amount of the taxes, with the exception of allowances for mistakes and insolvencies, being considered, at the end of three months from his receipt of the corrected duplicates, as actually in his hands. In this respect, therefore, the commissioners have nothing to do with the person or property of the taxable inhabitant, the collection being a matter exclusively between him and the collector, who alone is liable to. the county. There can be no outstanding taxes but in the hands of the collectors; and we accordingly find the practice to credit them as such on the treasurer’s books, is universal. The remedy against the collector is not in addition to a ■supposed remedy against the person or property of the taxable inhabitant; for by the supplementary act of the 2d of April, 1821, it was provided, that wherever the. collector had failed to collect the taxes within the time prescribed, he might maintain an action in his own name; thus giving him a personal remedy.for unpaid taxes as for his proper debt: -which is inconsistent with the notion that the commissioners have a direct claim against the taxable inhabitant, and that their remedy against the collector is cumulative. If they ever had such a claim it was transferred by this act; but the truth is they never had. The act was passed for equitable reasons; to restore to the collector, authority to usé compulsory means, which he had lost by indulgence beyond the period when all authority to proceed under his warrant, had ceased. Under this act therefore he collected the tax as a debt due not to the county, but to himself, and of which he had become the owner by substituting his own lia *114 bility for that of the debtor. This act is repealed by the supplementary act of the 11th March, 1822, which authorises the collectors to proceed under their respective warrants at any time within three years from the date; but without in any respect impairing the effect of the 16th and 18th sections of the actof 1799, which fix the collectors for the amount of their respective duplicates to the county.'
The selling of hands for the trifling amount of taxes usually due on them, is always attended with inconvenience and vexation to the owners, who are often involved in trouble and expense, by the sheer neglect of the collectors, who seldom make a personal demand. This, and not the amount to be paid, has been the cause of the repugnance constantly evinced to acts of congress laying a land tax, which have always contained a provision for the sale of land itself, in default of payment. Our state legislature, on the contrary, have ever been guided by the wise policy of not looking to the land, in that class of cases which necessarily affords a reasonable probability of obtaining the tax from the person or chattels of the owner. They seem to have supposed, that on every tract in actual occupancy, sufficient personal property, would be found, to satisfy the demand by distress ; and the very few instances in which this might not be the case, were thought too unimportant to merit special provision. By the act of the 3d of Mpril, 1804, tenants in possession are made'liable, just as if they were the owners of the land, with an optional right of recovery, against th.eir landlords, or of defalcation out of the rent. Before this time,, the laws were founded on a supposition, for the most part true, that the owners of improved lands, re-sidéd on them, and in that case, the taxes could be obtained by the use of due diligence, from their persons or property. Since this act, however, nothing can be lost, except ifi cases of absolute insolvency; and the’collector will be entitled to an allowance on that ground.
It is remarkable that the person and the land are never both charged for money' due in respect of the land. Purchase money due the state is a charge on the land itself and not on the person of the grantee; and taxes on unseated lands, have never I believe been considered a charge on the person of the owner, wb a may abandon them whenever they are not worth the taxes. There is no other means of obtaining taxes due on. these, than a sale under the act of assembly. In the case of seated lands, there is no -other means than distress of the owner, or occupant’s chattels,- or commitment of the body, If the legislature had intended to create a lien, they would have provided some direct means of enforcing it; and the inference from the want of such a provision, is irresistible. It is altogether incredible, that they would have trusted to the uncertain and improbable event of the End being at some period, sold by the Sheriff, and of the purchase money being brought into court for distribution ; in which case, only, the lien would be availing. A lien without retention of possession, or any other means of rendering it produe- *115 live, is altogether so worthless, as to preclude all idea of its having ever been in the contemplation of any one.
I am therefore of opinion, that the plaintiffs have leave to take the money claimed by the collector, out of court.
Judgment that the plaintiff have leave to take out of court the money which was claimed for taxes.